United States District Court
Southern District of Texas
**ENTERED**
October 13, 2022
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| AMALIA TORRES | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 4:21-CV-00019 |
| | § | |
| GULF COAST JACKS, INC. | § | |
| | § | |
| Defendant. | § | |
| | § | |
| | § | |
| | § | |

## ORDER

Pending before the Court is Defendant Gulf Coast Jacks, Inc.'s ("Defendant") Motion to Dismiss Plaintiff's First Amended Complaint (Doc. No. 28). Plaintiff Amalia Torres ("Torres" or "Plaintiff")[1] filed a Response in opposition. (Doc. No. 31). Defendant filed a Reply in support. (Doc. No. 32). After reviewing the briefing and applicable law, the Court **DENIES** Defendant's Motion to Dismiss (Doc. No. 28).

## I. Background

This case concerns alleged Title VII discrimination and retaliation.[2] The business relationship appears to be as follows. Defendant is a corporation that owns and operates Jack in the Box restaurants. Plaintiff was employed by Defendant. While working for Defendant, Plaintiff claims that she experienced harassment and discrimination in the form of inappropriate comments

---

[1] Defendant's motion does not address any of the claims of the other plaintiffs. Therefore, the Court refers to Amalia Torres as Plaintiff individually.
[2] The Court notes that the First Amended Complaint contains many plaintiffs with multiple claims, including Fair Labor Standards Act claims. Defendant, however, only challenges the Title VII discrimination and retaliation claims of Plaintiff Amalia Torres. For that reason, the Court will focus on these topics.

1

and conversations about her religion, race, and national origin. In response to the treatment, Plaintiff filed several complaints to supervisors.

Eventually, Defendant transferred Plaintiff to another store location and promoted her to Team Leader. At the new location, Plaintiff claims she experienced additional harassment. As recounted by Torres, she attempted to bring the topic to the supervisors' attention at a store meeting; however, the supervisors "shut down" the conversation. The day after the meeting Plaintiff filed a formal complaint with the Gulf Jacks Human Resources. A few days later, Defendant fired Plaintiff.

Plaintiff filed this lawsuit, alleging that Defendant's managers discriminated against her and harassed her on the basis of her race, national origin, and religion and that the conduct amounted to a hostile and abusive working environment. Additionally, Plaintiff claims that Defendant's conduct constitutes retaliation against her because she engaged in activities protected by Title VII and the FLSA and as a result she was fired. Defendant filed this Motion to Dismiss.

## II. Legal Standard

A defendant may file a motion to dismiss a complaint for "failure to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6). To defeat a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a

defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

In reviewing a Rule 12(b)(6) motion, the court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mut. Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007). The Court is not bound to accept factual assumptions or legal conclusions as true, and only a complaint that states a plausible claim for relief survives a motion to dismiss. *Iqbal*, 556 U.S. at 678–79. When there are well-pleaded factual allegations, the court assumes their veracity and then determines whether they plausibly give rise to an entitlement to relief. *Id.*

### III.  Analysis

#### A.  Exhaustion of Remedies.

Defendant initially argues that Plaintiff failed to exhaust her remedies as required by the Civil Rights Act. The Civil Rights Act of 1964 permits employees to seek relief from proscribed discriminatory employment practices. *Pacheco v. Mineta*, 448 F.3d 783, 787–88 (5th Cir. 2006). As a precondition to seeking judicial relief, complainant employees must exhaust their administrative remedies by filing a Charge of Discrimination ("Charge") with the Equal Employment Opportunity Commission ("EEOC"). *Id.* at 788. It is well-settled that courts have no jurisdiction to consider Title VII claims as to which the aggrieved party has not exhausted administrative remedies. *Nat'l Ass'n of Gov't Emps. v. City Pub. Serv. Bd. of San Antonio, Tex.*, 40 F.3d 698, 711 (5th Cir. 1994).

The Fifth Circuit notes that "the provisions of Title VII were not designed for the sophisticated," and that because most complaints are initiated *pro se*, the Court should construe the scope of an EEOC complaint liberally. *Id.* Additionally, courts have held that "[a] judicial

complaint filed pursuant to Title VII may encompass any kind of discrimination like or related to allegations contained in the charge and growing out of such allegation during the pendency of the case before the Commission" *Nat'l Ass'n of Gov't Emps*, 40 F.3d at 711. The suit filed "may encompass only the discrimination stated in the charge itself or developed in the course of a reasonable EEOC investigation of that charge." *Id.* In determining whether a plaintiff exhausted her remedies, courts must engage in fact-intensive analysis of the plaintiff's statement in the administrative charge, and look slightly beyond its four corners, to its substance rather than its labels. *Pacheco*, 448 F.3d at 789. To satisfy the exhaustion requirement, "a claim generally must arise out of the plaintiff's EEOC charge," but "a claim need not always arise from the EEOC charge *form*." *Ernst v. Methodist Hosp. Sys.*, 1 F.4th 333, 337 (5th Cir. 2021) (emphasis in original). In certain circumstances, other documents can serve as a charge. *See e.g. Federal Express Corp. v. Holowecki*, 552 U.S. 389, 405–07 (2008) (the court determined that a sufficiently detailed and verified intake questionnaire sufficed as a charge under the Age Discrimination in Employment Act).

### *1. Exhausting Administrative Remedies for Race Discrimination*

Defendant argues that Plaintiff failed to exhaust her administrative remedies for her racial discrimination claim because she did not check the "Race" box in her EEOC Charge. (Doc. No. 28 at 4). The scope of a Title VII lawsuit is limited to the allegations made in the EEOC charge and any claims that could reasonably be expected to grow out of it. *Fine v. GAF Chemical Corp.*, 995 F.2d 576, 578 (5th Cir.1993). In some fact scenarios, the Fifth Circuit has held that a plaintiff did not exhaust his or her administrative remedies when the plaintiff failed to check the appropriate box on the EEOC Charge form. *See Luna v. Lockheed Martin Corp.*, 54 Fed.Appx. 404 (5th

Cir.2002).³ That said, a plaintiff's failure to check a box is not always fatal. *See Sanchez v. Standard Brands, Inc.*, 431 F.2d 455 (5th Cir. 1970).⁴ "If, by looking to *either* the factual allegations *or* the checked boxes, a specific type of type of discrimination claim could reasonably be expected to grow out of the allegations in an EEOC charge, then the plaintiff has exhausted her administrative remedies." *Ollie v. Plano Indep. Sch. Dist.*, 565 F. Supp. 2d 740 (E.D. Tex. 2007) (emphasis added).

It is undisputed that Plaintiff did not check the "Race" box in her EEOC Charge form. That said, the Court also considers Plaintiff's statements in her Charge when deciding whether she exhausted her administrative remedies. (Doc. No. 31-3). In this case, Plaintiff attached her EEOC Inquiry Information form to her Response. (Doc. No. 31-3 at 3-8). The relevant question is whether that document qualifies as a statement in the EEOC Charge. The Inquiry Information form is not signed nor verified. *Ernst*, 1 F.4th at 339 ("to satisfy the verification requirement, a charge must be 'sworn to or affirmed before a notary public, designated representative of the [EEOC], or other person duly authorized by law to administer oaths ... or supported by an unsworn declaration in writing under penalty of perjury.'"). For that reason, it is not considered a Charge. *Id.* ("charge must 'be in writing and signed and ... verified.'"). Thus, the Court cannot consider the factual allegations contained within the Inquiry Information form when determining whether Plaintiff exhausted her administrative remedies.

---

³ "Here, in his EEOC charge, Luna failed to mark the box indicating his intention to bring a claim of national origin. Rather, Luna only checked the box indicating his intention to bring a claim of retaliation. Because Luna did not raise [a] national origin discrimination claim in his EEOC charge, Luna failed to exhaust his administrative remedies as to that claim. Therefore, we conclude that the district court correctly granted Lockheed's motion for summary judgment on Luna's claim of national origin discrimination." *Luna*, 54 Fed.Appx. 404.

⁴ In the *Sanchez* case, the Fifth Circuit held that a plaintiff's failure to check the "sex" box on her EEOC Charge form "was a mere technical defect or omission." *Id.* at 462. The court emphasized that the crucial element of the charge is the factual statement. *Id.*

5

While Plaintiff did not check the "Race" box in her EEOC Charge form, Plaintiff states in her EEOC Charge form, "I believe I was discriminated against because of my race." (Doc. No. 31-3 at 9). Defendant could reasonably expect a race discrimination claim to "grow out of" that statement. Thus, the Court believes that Plaintiff sufficiently exhausted her remedies as to her claims of racial discrimination.

### 2. Exhausting Religious Discrimination, National Origin Discrimination, and Retaliation Remedies

Defendants also contend that Plaintiff failed to exhaust her remedies for her national origin and religion discrimination and retaliation claims because she did not allege any facts that relate to religion, national origin, or retaliation. (Doc. No. 28 at 8). Unlike the race claim, Plaintiff checked all the boxes in the Charge form for discrimination based on retaliation, religion, and national origin. (Doc. No. 31-3 at 9). Plaintiff also included factual allegations to support her claims.[5] For that reason, the Court concludes that Plaintiff exhausted her remedies as to religion, national origin discrimination, and retaliation.

### B. All Claims Are Time Barred.

Defendant next argues that all of Plaintiff's claims are barred by the statute of limitations. (Doc. No. 28 at 4). After Plaintiff filed her Response (Doc. No. 31), however, Defendant retracted that argument on the statute of limitations ground. (Doc. No. 32 at 1). Therefore, the Court need not address this issue.[6]

---

[5] Plaintiff says that she was "called Mother," presumptively in connection with her religious beliefs (Catholicism). (Doc. No. 31-3 at 9). Additionally, Plaintiff says in her Charge that she "feel[s] Respondent terminating [sic] my employment is pretext for discrimination," supporting a retaliation claim. (Doc. No. 31-3 at 9). Lastly, Plaintiff describes conduct that potentially constitutes discrimination on the basis of national origin: "I believe I was discriminated against because of my ... national origin." (Doc. No. 31-3 at 9).

[6] Title VII requires a party to file suit in federal court within 90 days of receiving a right to sue letter by the EEOC. 42 U.S.C. § 2000e–5(f)(1). Plaintiff received her Notice of Right to Sue Letter on August 25, 2020. (Doc. No. 25 at 3). She filed her Original Petition in state court on November 23, 2020. (See Doc. No. 1, Ex. 3). This is clearly within the 90-day window.

**C. Title VII Statute of Limitation.**

More specifically, Defendant argues that Plaintiff did not timely file her claims for discrimination based on race and religion. (Doc. No. 28). Title VII's statute of limitations requires claimants to sue within ninety days of receiving their Right to Sue Letter. *Duron v. Albertson's LLC*, 560 F.3d 288, 290 (5th Cir. 2009) (per curiam) ("A plaintiff alleging employment discrimination must file a civil action no more than ninety days after she receives statutory notice of her right to sue from the EEOC."). While the requirement to file a lawsuit within the 90-day period is "strictly construed," it is not considered jurisdictional. *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378-79 (5th Cir. 2002); *Espinoza v. Missouri Pac. R. Co.*, 754 F.2d 1247, 1250 (5th Cir. 1985). Rather, it is akin to a statute of limitations defense that is subject to exceptions, such as equitable tolling, waiver, and estoppel. *Id.*

In fact, the Fifth Circuit has applied the Relation Back Doctrine[7] in the Title VII context. *See Watkins v. Lujan*, 922 F.2d 261 (5th Cir. 1991). That doctrine, however, is not a failsafe. The Fifth Circuit in *Jones v. Federal Express Corporation* held that a plaintiff's claims were time barred when he failed to mention the claims or any factual allegations supporting the events until after the 90-day filing time. *See Jones v. Fed. Exp. Corp.*, 145 F.3d 359 (5th Cir. 1998). Defendant challenges the timeliness of two claims—the racial discrimination claim and the religion discrimination claim—for two different reasons. The Court will address each claim, starting with the racial discrimination claim.

---

[7] An amendment to a pleading relates back to the date of the original pleading when: ... (b) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out--or attempted to be set out--in the original pleading. Federal Rule of Civil Procedure 15(c).

7

*1. Race Discrimination Claim*

Defendant contends that Plaintiff failed to timely file a claim for race discrimination. (Doc. No. 28 at 6). Specifically, Defendant argues that Plaintiff did not allege a claim of race discrimination until her First Amended Complaint[8], that Plaintiff filed more than 90-days after receiving her Right to Sue Letter. (Doc. No. 28 at 7). Plaintiff's Original Petition alleges "Wrongful Termination/WHISTLEBLOWER) and "[h]arrassment in the work place because of [Plaintiff's] national origin and religion and was female and in retaliation I was terminated." (Doc. No. 1-3). The Original Petition did not include a claim of race discrimination. (*See* Doc. No. 1-3). The First Amended Complaint, however, does contain a cause of action for racial discrimination under Title VII.[9] (Doc. No. 15 at 11). Thus, the question becomes whether Plaintiff's First Amended Complaint, containing allegations of racial discrimination, relates back to Plaintiff's Original Petition (Doc. No. 1-3).

"Generally, amendments that raise a new legal theory do not 'relate back' to an original charge of discrimination." *Manning v. Chevron Chem. Co.*, 332 F.3d 874, 878 (5th Cir.2003). The Court must determine whether discrimination on the basis of race is a "new legal theory" for purposes of relation back. The case law on that particular question is not well-settled. *See e.g. Davis v. Educ. Serv. Cent.*, 62 S.W.3d 890, 894 (Tex.App.—Texarkana 2001, no pet.) (In a Texas Commission of Human ("TCHRA") rights case, the court held that retaliation was an independent violation from discrimination under the TCHRA); *Univ. of Texas v. Poindexter*, 306 S.W.3d 798,

---

[8] The Court notes that there may be some confusion created by the docket entries. The docket sheet contains two "First Amended Complaints." (Doc. Nos. 15, 25). The Court will refer to the first filed (Doc. No. 15) as the First Amended Complaint and the second filed as the Second Amended Complaint. (Doc. No. 25). Defendant's motion attacks aspects of both.

[9] "The Defendant's conduct as alleged at length herein constitutes discrimination based on race in violation of title VII… As a result of the racial discrimination Defendant subjected Plaintiff to, Plaintiff suffered damages including but not limited to lost compensation and other employment benefits." (Doc. No. 15 at 11).

8

809 (Tex. App. 2009) (did not allow retaliation charges to relate back to her earlier disparate-treatment complaint); *Boone v. Union Carbide Corp.*, 205 F. Supp. 2d 689 (S.D. Tex. 2002) (holding that newly alleged Title VII claims related back to originally filed complaint that only alleged TCHRA claims).

Defendant contends that the Fifth Circuit case, *Jones v. Federal Express Corporation* controls. *See Jones*, 145 F.3d 359. In that case, the plaintiff originally filed his lawsuit alleging that his termination violated the Americans with Disabilities Act and constituted retaliatory discharge. *Id.* at *1. More than 90-days after the EEOC issued the right-to-sue letter, the plaintiff filed his first amended complaint, which included allegation relating to a refusal-to-rehire claim. *Id.* The court found that the plaintiff's claims were time barred since he failed to mention the claims or any factual allegations supporting the events until after the 90-day filing time. *Id.* at *2.

This Court finds that the *Jones* case, however, is distinguishable from the case at hand. In that case, the Fifth Circuit emphasized that the "[original] pleading contained no factual allegations" concerning Federal Express refusal to rehire him. *Id.* at *1. Instead, his original complaint only contained factual allegations relating to his February 1992 termination." *Id.* at *2. Unlike the *Jones* case, Torres's Original Petition encompasses the same events, transactions, and occurrences for all of her allegations. Thus, racial discrimination is an additional contention based upon the same conduct that is the basis for the retaliatory conduct, harassment, and claims—all of which occurred during Plaintiff's time working for Defendant.

The Court is of the opinion that the claims concerning discrimination based on race relate back to the originally filed complaint. Thus, the Court denies Defendant's Motion to Dismiss as to this point.

## 2. *Religious Discrimination*

The Court faces a different question with the religious discrimination claim. The Court must determine whether Plaintiff abandoned her claim for discrimination based on religion when she included the contention in her Original Petition, but failed to include it in her First Amended Complaint. (*See* Doc. No. 15).

The Fifth Circuit answered a similar question in *Watkins v. Lujan*. *See Watkins*, 922 F.2d 261. In the *Watkins* case, the plaintiff originally filed a complaint, containing Title VII allegations, within the statutory deadlines.[10] *Id.* Subsequently, the plaintiff amended his complaint and doing so deleted his Title VII claims in favor of Section 1981 claims. *Id.* at 262. Later, the plaintiff, after the statutory deadline pass, tried to reassert his Title VII claims. *Id.* The court found that the Title VII cause of action related back to the originally filed complaint because at all times the operative facts upon which the cause of action was based remained the same. *Id.* at 265. Thus, limitations did not bar the reasserted Title VII claims. *Id.*

Like the *Watkins* case, Plaintiff was *pro se* when she filed her Original Petition in Texas State court. In her Original Petition, Plaintiff alleged, among other claims, discrimination on the basis of religion. (Doc. No. 1-3 at 2).[11] The parties do not dispute that the Plaintiff timely filed her Original Petition. Rather, the argument concerns the First Amended Complaint where Plaintiff did not include a cause of action related to harassment or discrimination based on her religion, yet still alleged the facts underlying religious discrimination claim.[12] In her Seconded Amended

---

[10] The Court notes that in the *Watkins* case, the plaintiff had to file his suit within 30 days of receipt of the right-to-sue notice from the EEOC. *Watkins*, 922 F.2d at 263. This is because the case involved federal employment discrimination. Id. Here, the deadline to bring suit is 90 days from receipt of the right-to-sue notice.

[11] "Harassment in the work place because of my national origin and religion." (Doc. No. 1-3 at 2).

[12] "Amalia would be refused Sundays off because she was Catholic and 'Catholicism wasn't shit no more", you had to be 'Christian' to get Sundays off." (*See* Doc. No. 15 at 7).

10

Complaint, Plaintiff reasserted her religious discrimination cause of action. (Doc. No. 25 at 20). The Court concludes that Plaintiff did not abandon this cause of action and denies Defendant's motion to dismiss on this ground.

### D. Plaintiff Alleges Facts Relating to a Claim for Race Discrimination.

Lastly, the Court addresses Defendant's argument that Plaintiff failed to state a claim of race discrimination because none of the factual allegations in her Second [First] Amended Complaint[13] relate to race. (Doc. No. 28 at 7).

A complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rather, a plaintiff must provide the grounds of her entitlement to relief, which requires more than labels and conclusions, and a formulaic recitation of the elements of the cause of action. *Id.* In the Title VII context, a plaintiff need not plead a prima facie case based on discrimination to survive a Rule 12(b)(6) motion. *See Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 511–12. Instead, she must set forth allegations that would enable the court to reasonably infer that her employer discriminated against her in violation of Title VII and took the alleged adverse employment action because she is a member of a protected class. *Cicalese v. Univ. of Texas Med. Branch*, 456 F. Supp. 3d 859, 867 (S.D. Tex. 2020).

Contrary to Defendant's contention, Plaintiff alleges several facts that directly relate to discrimination on the basis of race. For example, Defendant's employee allegedly threatened to "call the immigration authorities." (Doc. No. 25 at 4–5). Plaintiff also alleges that Defendant's

---

[13] Defendant states that "none of the factual allegations in her second First Amended Complaint relate to race," and then cites to Plaintiff's First Amended Complaint. (Doc. No. 28 at 7). The Court will consider the factual allegations alleged in the Second Amended Complaint (Doc. No. 25) since Plaintiff filed it after receiving leave of Court. *Stewart v. City of Houston Police Dep't*, 372 F. App'x 475, 478 (5th Cir. 2010) ("An amended complaint supersedes the original complaint and renders it of no legal effect.").

employee made comments such as, "you're an immigrant, no one cares what you have to say." (Doc. No. 25 at 7). The Seconded Amened Complaint also includes several allegations that supervisors spoke to her offensively in Spanish, calling her derogatory names. (Doc. No. 25 at 5-11).[14]

The Court concludes that Plaintiff alleged sufficient factual allegations regarding discrimination on the basis of race to survive a motion to dismiss. If it turns out that there are no facts to support such a claim, Defendant may revisit this holding by filing an appropriate motion under Federal Rule of Civil Procedure 56. *See* Fed. R. Civ. P. 56.

### IV. Conclusion

For the reasons stated above, the Court herby denies Defendant's Motion to Dismiss Plaintiff's First Amended Complaint. The Court orders that the case will proceed with the understanding that the "First Amended Complaint" filed as Docket Entry 25 will be the operative complaint, and that the "First Amended Complaint" filed as Docket Entry 15 will be considered a nullity.

Signed at Houston, Texas, this 13th day of October, 2022.

Andrew S. Hanen
United States District Judge

---

[14] Defendant argues that the outlined allegations relate to national origin, not race. (Doc. No. 32 at 4). In the context of a motion to dismiss where the Court must accept all well-pleaded facts as true, the Court recognizes that the stated comments can apply to both a race and a national origin discrimination claim.